# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAR -5 PM 3: 51

CLERK'S OFFICE
AT BALTIMORE

BY————————DEPUTY

**Mr. Walter Anderson**            *
5600 Leiden Road – Apartment 2C
Baltimore, Maryland 21206          *

                                   *

**Ms. Ella Carroll Price**         *
606 N. Ashburton Street            *
Baltimore, Maryland 21216
                                   *

**Mr. Phil Rosenblatt**            *
820 S. Paca Street
Baltimore, Maryland 21230          *
        *Plaintiffs*

GLR-17-924

**Jury Trial Requested**

**v.**                             *

**MAX SCORE CREDIT LLC.**          *     *Collective Action-FLSA, Owed Overtime*
 1700 Reisterstown Road   - Suite 223    *
Pikesville, Maryland 21208               *Civil Action – Section 7434 of 26 U.S.C.*
    *serve on:*             *
    Donna M. B. King
    309 W. Pennsylvania Avenue    *
    Towson, Maryland 21204

                                   *

                                   *

**SHARON CRAIG**                   *
*Owner*
1700 Reisterstown Road – Suite 223 *
Pikesville, Maryland 21208
    *Serve on:*             *
    Donna M.B. King
                                   *

        ***Defendants***

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

1

## COMPLAINT

Plaintiffs, former employees of the Defendant Max Score Credit LLC, headquartered in Baltimore County, Maryland ("Max Score Credit"), respectfully file this Complaint on behalf of themselves and similarly situated employees, seeking owed overtime wages from Defendants and to redress Defendants' inaccurate, fraudulently filed W2 tax forms concerning their wages. The claims are asserted under the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL"), Maryland Wage Payment and Collection Law ("MWPCL"), and 26 U.S.C. § 7434. Plaintiffs seek collective action status on their claims for owed overtime under the FLSA in Count I, and class action status on their claim under 26 U.S.C. § 7434 in Count IV and other claims.

### PLAINTIFFS

1. Plaintiff Walter Anderson is an adult citizen of the State of Maryland.

2. Plaintiff Ella Carroll Price is an adult citizen of the State of Maryland.

3. Plaintiff Phil Rosenblatt is an adult citizen of the State of Maryland.

4. Pursuant to the Maryland Wage and Hour law ("MWHL"), the Maryland Wage Payment and Collection Law ("MWPCL"), and the federal Fair Labor Standards Act ("FLSA"), Plaintiffs institute this action for actual damages, liquidated damages, treble damages, statutory penalties, restitution, and attorney's fees and the costs of this action against Defendant for its failure to pay overtime.

5. Pursuant to 26 U.S.C. § 7434, Plaintiffs institute this action for actual damages, attorney's fees and the costs, and the statutory penalty of $5,000 per Plaintiff, for Defendants' inaccurate, fraudulently-filed W2 wage statements.

6. Plaintiffs were non-exempt employees within the meaning of the FLSA, and the Maryland Labor & Employment Code, and the implementing rules and regulations of the FLSA and the Maryland Labor & Employment Code.

7. Plaintiffs seek treble damages, pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-507(b).

## DEFENDANTS

8. Defendant Max Score Credit operates a for-profit company to help businesses and consumers establish or repair their credit scores..

9. Defendant Max Score Credit operates at three different locations in the State of Maryland.

10. Defendant Max Score Credit's annual gross volume of sales and/or business done exceeds $500,000.

11. Defendant Max Score Credit engages in interstate commerce.

12. Defendant Max Score Credit is a Maryland registered corporation.

13. Defendant Max Score Credit is headquartered in Baltimore County, Maryland.

14. Defendant Max Score Credit was Plaintiffs' employer within the meaning of the term of the MWHL, Md. Ann. Code, Labor & Employment, §3-401(b), the MWPCL, Md. Ann. Code, Labor & Employment, §3-501, and the FLSA, 29 U.S.C. § 203(d).

15. Defendant Max Score Credit was responsible for filing tax forms with the U.S. Internal Revenue Service ("IRS") concerning wages earned by its employees, including for each Plaintiff.

16. Defendant Max Score Credit is subject to the MWPCL, MWHL, and FLSA.

17. Defendant Max Score Credit employed and paid the Plaintiffs as its employees.

3

18. Defendant Max Score Credit is in sole possession of the documents necessary to state a precise claim for damages.

19. Defendant Sharon Craig is the owner and ran the business operations of Defendant Max Score Credit since April 2016.

20. Defendant Sharon Craig manages the day-to-day running of Defendant Max Score Credit since at least April 2016. .

21. Defendant Sharon Craig negotiates jobs for Defendant Max Credit Score and prices costs for those jobs since at least April 2016.

22. Defendant Sharon Craig decided and helped to implement and enforce Defendant Max Score Credit's illegal overtime scheme.

23. Max Score Credit's illegal overtime scheme is detailed in the Complaint, below, and incorporated herein.

24. Defendants Max Score Credit and Craig are statutory employers within the meaning of the FLSA and similarly construed Maryland law (the "Defendants").

## FACTS RELATING TO FLSA AND WAGE VIOLATIONS UNDER MARYLAND LAW

25. Plaintiffs were employed as senior credit advisors at all three locations for Defendants in Maryland.

26. Defendants required all senior credit advisors in the sales department to work more than forty hours almost every week.

27. Defendants employed Plaintiffs as salaried plus bonus workers.

28. Defendants paid Plaintiffs each through a bi-weekly paycheck.

29. Defendants paid Plaintiffs bonus checks either weekly or every few weeks depending on production without taxes taken out of the bonus checks. (See Exhibit 1)

30. All Plaintiffs worked for Defendants from around 2014 through fall 2016.

31. Defendant paid Plaintiff Walter Anderson as a senior credit advisor in the sales department

32. Defendant paid Plaintiff Ella Carrol Price as a senior credit advisor in the sales department

33. Defendant paid Plaintiff Phil Rosenblatt as a senior credit advisor in the sales department.

34. Defendants failed to pay Plaintiffs all overtime owed and due.

35. Defendants' failure to pay Plaintiffs all wages was intentional and willful.

36. Defendants' failure to pay Plaintiffs all wages and make proper deductions owed was not the result of a bona fide dispute.

37. Over two (2) weeks have elapsed from the date on which the Defendants were required to have paid Plaintiffs all of their owed wages and deductions as required by the MWPCL, Labor and Employment § 3- 507.2(a).

38. Defendants failed to pay employees all overtime due in a timely manner after cessation of employment as required by the MWPCL, Labor and Employment § 3- 505.

39. Plaintiffs can satisfy all requirements for maintaining claims under the MWHL, the MWPCL, and the FLSA.

40. Defendants willfully and intentionally failed to pay the Plaintiffs at a rate of one and one-half times their regular rate of pay for all overtime hours worked over 40 hours in a work week as required by the MWHL, and the FLSA, and this non-payment is untimely under the MWPCL.

41. When Plaintiffs and similarly situated employees were hired by Defendants as senior credit advisors in the sales department they were required to complete a "training period"

that typically lasted anywhere from two (2) weeks up to one (1) month.

42. During the training period, Defendants willfully and intentionally did not deduct federal income taxes from Plaintiffs' and similarly situated employees' pay checks.

43. Defendants willfully and intentionally did not report the income that Plaintiffs and similarly situated employees earned during their training periods on Plaintiffs' and similarly situated employees' W2's.

44. Upon information and belief, if an employee's training period began at the end of one year and ended at the beginning of the following year, the W2's for both years would be fraudulent, as neither would report the wages the employees earned during their probationary period from either year.

45. Defendants did this routinely with respect to each senior credit advisor in the sales department. **See Exhibit 1.**

46. Defendants failed to report these separate and distinct checks as wages to the IRS on W2s for each Plaintiff on both bonus checks and during their training period.

    A) Defendants, with knowledge, willfully falsified wage records for each Pla

47. Defendants also issued bonus checks without taxes being taken out.

48. Accordingly, all W2's issued by Defendants to Plaintiffs and similarly situated senior credit advisors in the sales department during their first year of employment and thereafter with Defendants were fraudulent in that they did not report the wages Plaintiffs and similarly situated employees earned.

49. Additionally, Defendants also deducted health insurance premiums for Plaintiff Walter Anderson and other senior credit advisors in the sales department and other employees working for Max Score Credit.

6

50. Defendants failed to send the health insurance premiums from at least September 2016 through sometime in October 2016 to the health insurance company. **See Exhibit 2**

## JURISDICTION AND VENUE

51. The jurisdiction of this Court is invoked due to the asserted violation of a federal statute and pursuant to of 28 U.S.C. § 1331.

52. Venue is appropriate in this jurisdiction because Defendant Max Credit Score is a Maryland corporation based in this District.

53. Jurisdiction and venue is appropriate in this District because Defendants' illegal conduct was decided within and originated from Defendant Max Credit Score in this District.

54. Defendants' policy established in this District affected employees working at various locations in Maryland.

55. Defendant Craig's business office is in this District. *See* Exhibit 1.

## VIOLATIONS OF LAW

### COUNT I – OWED OVERTIME (HOURS WORKED OVER 40 PER WEEK).

56. All allegations of the Complaint are expressly incorporated herein.

57. During Plaintiffs' employment with Max Score Credit, Defendants refused to timely pay Plaintiffs an overtime rate for all hours worked over forty hours per week. .

58. Defendants' failure to pay overtime is untimely and grossly overdue.

59. Defendants' failure to pay overtime in a timely manner at or shortly after cessation of employment of one or more Plaintiffs is, right now, untimely and grossly overdue

60. Defendants are in sole possession of the documents necessary to state a precise claim for damages.

61. There is no bona fide dispute that Plaintiffs are owed the requested wages.

7

62. Plaintiffs seek redress under the Maryland Wage and Hour Law § 3-427, Maryland Wage Payment and Collection Law Section § 3-507.2, and Fair Labor Standards Act § 216(b).

63. Relief requested - Plaintiffs requests that: (a) Defendants be ordered to pay Plaintiffs all of their owed overtime wages; (b) Plaintiffs be awarded pre- and post-judgment interest; (c) Plaintiffs be awarded treble damages and/or statutory damages; (d) Plaintiffs be awarded their attorney's fees and costs.

### *FLSA OVERTIME COLLECTIVE ACTION ALLEGATIONS UNDER COUNT I*

64. This action is concurrently maintainable as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as to claims for owed overtime wages, liquidated damages, and attorneys' fees and costs under the FLSA.

65. In addition to Plaintiffs, there are numerous current and former employees of Max Score Credit who are similarly situated to Plaintiffs with regard to being subject to the same unlawful wage hour policies of the Defendants.

66. These similarly situated employees are known to Defendants and are readily identifiable and locatable through Max Score Credit records.

67. The many similarly situated employees were subject to the same pay policies and practices as the Plaintiffs, including

        (a) not being paid overtime for hours worked over 40 hours per week

68. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. §216(b), for the purpose of adjudicating their claims for liquidated damages and attorneys' fees under FLSA.

### COUNT II –PLAINTIFFS UNPAID TRANSPORTATION WORK (MWPCL).

69. All allegations of the Complaint are expressly incorporated herein.

70. Defendants required Plaintiffs to meet various customers as part of Plaintiffs' regular job duties at their offices and at other locations.

71. Defendants did not pay Plaintiffs for the time when Plaintiff had to travel to and from the office where they worked in Maryland to the customers' locations.

72. Plaintiffs drove to the customer's locations, and depending on traffic and worksite location, this travel time ranged from 1 to 3 hours (hereinafter "travel time").

73. Plaintiffs were not paid for this waiting and travel time.

74. Defendants failed to pay Plaintiffs for this waiting time and travel time that benefited Defendants and was at Defendants' request and command.

75. Defendants' failure to pay Plaintiffs was knowing and willful and not subject to any bona fide dispute.

76. Plaintiffs seek redress under the Maryland Wage Payment and Collection Law Section § 3-507.2 and Maryland common law.

77. Relief requested – Plaintiffs request that: (a) Defendants be ordered to pay Plaintiffs owed wages; (b) Plaintiffs be awarded pre- and post-judgment interest; (c) Plaintiffs be awarded treble damages; and (d) Plaintiffs be awarded attorney's fees and costs.

## COUNT III –PLAINTIFFS UNPAID TRANSPORTATION WORK (FLSA).

78. All allegations of the Complaint are expressly incorporated herein.

79. Plaintiffs worked eight hour shift days in addition to their unpaid transportation work that consisted each day of waiting and travel time.

80. Plaintiffs were paid nothing even though Plaintiffs were due compensation at the overtime rate for all waiting and travel time worked.

81. Defendants refusal to pay Plaintiffs was wrongful, willful, and of evil motive.

82. Plaintiffs seeks redress under the FLSA.

83. <u>Relief requested</u> – Plaintiffs request that: (a) Defendants be ordered to pay Plaintiffs owed overtime; (b) Plaintiffs be awarded pre- and post-judgment interest; (c) Plaintiffs be awarded liquidated damages; and (d) Plaintiffs be awarded attorney's fees and costs.

## COUNT IV – <u>WILLFUL FRAUDULENT TAX FILINGS (AS TO DEFENDANTS MAX SCORE CREDIT & DEFENDANT CRAIG)</u>

84. All allegations of the Complaint are expressly incorporated herein.

85. Defendants were responsible to submit accurate wage statements for each Plaintiff to the IRS.

86. Defendant willfully and knowingly filed false W2 forms that misstated wages earned with one or more of the following inaccuracies:

   A) Defendants paid Plaintiffs checks as 'straight checks' during their probationary period without tax withholdings and did not report this income to the IRS;

   B) Defendants issued bonus checks after the probationary period and did not report these withheld wages to the IRS;

87. In summary, Defendants knowingly filed false W2s with the IRS concerning Plaintiffs' employment wages and misstated the amount paid in fact, and the amount owed in fact, to the IRS.

88. Defendant Craig knowingly caused the filing of false W2s through the creation and/or approval of Defendant Max Score Credit's pay, overtime, and tax policies beginning in April 2016 if not earlier.

89. Defendant Craig knowingly failed to prevent and/or correct false W2s from being filed

10

with the IRS despite her duty to do so as Owner of Max Score Credit beginning in April
2016.

90. Plaintiffs sue for redress under 26 U.S.C. § 7434.

91. Relief requested - Plaintiffs pursuant to subsection (b) of 26 U.S.C. § 7434 request that:
(a) Defendants are ordered to pay Plaintiffs actual damages; (b) attorney's fees and costs
for bringing this legal action; (c) and statutory penalty of $5,000.

## *CLASS ACTION*

### *for WILLFUL FRAUDULENT TAX FILINGS under COUNT IV*

### *AS TO DEFENDANTS MAX SCORE CREDIT & CRAIG*

92. All allegations of the Complaint are expressly incorporated herein.

93. Plaintiffs seek class action status for similarly situated workers with these operative facts:

    A) worked for Defendant at anytime during 2014 through the present date;

    B) as senior credit advisors in the sales department

    C) as non-exempt employees with overtime rights under the FLSA and/or state law;

    D) who worked in Maryland;

    E) and were subject to knowingly false wage statements by Defendants through filings
    of W2s.

94. The class is so numerous that joinder of all members is impracticable because the number
of workers exceeds 25.

95. The class is geographically diverse across Maryland and elsewhere and makes joinder
impracticable.

96. Class action is a superior method because these workers are numerous, unknown but
easily identifiable through Defendant's records.

11

97. Questions of law or fact common to the class, including the core claim that

   A) each was paid a bonus check via a 'straight check' without tax withholdings that was never reported to the IRS via a W2,

   B) and/or that each was paid during the first two weeks up to one month of employment by 'straight checks' without tax withholdings that were never reported to the IRS via a W2.

98. These core common facts are operative facts for determining claims and defenses, while differences in pay rates and job titles are details that do not change it.

99. These core common facts predominate any inconsequential differences such as slightly different pay rates or marginally different job titles.

100.    Claims and defenses of the representative parties are typical of the claims or defenses of the class because (a) Defendants subject the employees to the same illegal pay policies and, upon information and belief, continue to do so through the present date.

101.    The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class. Plaintiffs' litigation will further class interests.

102.    A class action furthers judicial economy because Plaintiffs' claims and class claims require the same proof and elicit the same defenses.

103.    A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

104.    A class action permits a unified discovery and reduces burdensome duplicate discovery and discovery disputes.

105.    The class action applies to Count IV of Plaintiffs' Complaint.

106.	This class action incorporates all remedies sought under Count IV and any remedy the Court deems just.

## COUNT V DEFENDANTS' NEGLIGENT WITHHOLDING OF MR. ANDERSON'S INSURANCE PREMIUMS

107.	All allegations of the Complaint are expressly incorporated herein.

108.	Defendants had a duty to Mr. Anderson, as his employers, to comply with the terms of their agreement and pay the health insurance premiums that the Defendants deducted in order to ensure Mr. Anderson's insurance coverage was current and in effect.

109.	Defendants breached their duty to Mr. Anderson by failing to pay the insurance premiums that Defendants deducted from Mr. Anderson's gross, pre-tax wages, on a bi-weekly basis.

110.	As a result of the Defendants breach of their duty to Mr. Anderson, his health insurance policy benefits were not in effect from September 2016 until October 2016.

111.	As a result of the Defendants' breach of their duty to Mr. Anderson, Mr. Anderson will be exposed to increased tax liability due to the fact that the Defendants underreported his total earned wages on his 2016 W-2.

112.	In March 2017, Defendants attempted to refund the unpaid premiums to Mr. Anderson without interest by way of a check that could not be cashed because it was dated in 2016. (See Exhibit 2)

113.	Relief requested: Mr. Anderson requests that: (a) Defendants be held jointly and severally liable and obligated to reimburse Mr. Anderson for all losses caused by Defendants' negligent withholding of Mr. Anderson's insurance premiums; (b)

Defendants be ordered to pay Mr. Anderson the actual damages for the negligently filed inaccurate W-2; (c) Defendants be ordered to pay Mr. Anderson's attorney's fees and costs; and (d) any further relief as justice may require.

## COUNT VI – UNLAWFUL CONVERSION OF IMPROPERLY WITHHELD INSURANCE PREMIUMS

114.     All allegations of the Complaint are expressly incorporated herein.

115.     From May 2016, Defendants withheld from Mr. Anderson's gross, pre-tax wages, on a bi-weekly basis, for the purpose of paying his health insurance premiums.

116.     Instead of paying Mr. Anderson's health insurance premiums, Defendants willfully and intentionally kept the funds that they withheld from Mr. Anderson's gross, pre-tax wages on a bi-weekly basis.

117.     Mr. Anderson never authorized Defendants to keep the pre-tax, bi-weekly deductions.

118.     Defendants were only authorized to withhold the pre-tax wages on a bi-weekly basis for the sole purpose of paying Mr. Anderson's health insurance premiums.

119.     The amounts that Defendants withheld from Mr. Anderson's gross, pre-tax wages, on a bi-weekly basis, are specifically identified on Mr. Anderson's paystubs and are easily identifiable and calculated.

120.     Defendants after Plaintiffs advised them in writing about the scheme to not send the health insurance premiums to the health insurer in 2017 then attempted to reimburse Plaintiff Anderson for the amounts that were previously deducted as health insurance premiums for September and October 2016. (See Exhibit 2)

121.     Unfortunately, Defendant Craig issued a stale check dated February 22, 2016 to reimburse Plaintiff Walter Anderson for the premiums in September and October 2016. (See Exhibit 2)

122.     Banks would not accept Exhibit 2 because it was more than one year later after February 22, 2017 when the check was actually sent by Defendant Craig to Plaintiff Walter Anderson.

123.     Defendants' willfully and intentionally retained the money deducted from Mr. Anderson's gross, pre-tax wages, on a bi-weekly basis, from September 2016 to October 2016, with consciousness of the wrongfulness of their actions.

124.     Relief requested: Mr. Anderson requests that: (a) Defendants be held jointly and severally liable and obligated to reimburse Mr. Anderson for all losses caused by Defendants' unlawful conversion of his insurance premiums; (b) punitive damages be assessed against the Defendants for their willful and intentional withholding of Mr. Anderson's insurance premiums; (c) if punitive damages are awarded, Defendants be ordered to pay Mr. Anderson's attorney's fees and costs; and (d) any further relief as justice may require.

## *CLASS ACTION*

### *for UNLAWFUL CONVERSION under COUNT VI*

### *AS TO DEFENDANTS CRAIG AND MAX CREDIT SCORE*

125.     All allegations of the Complaint are expressly incorporated herein.

126.     Mr. Anderson seeks class action status for similarly situated employees of Defendants who:

A) worked for Defendants at anytime from September 2016 until October 2016 and

worked in Maryland;

B) purchased voluntary health insurance;

C) agreed to have Defendants withhold their health premiums from their pre-tax, gross wages, on a bi-weekly basis;

D) agreed to have the Defendants pay their health insurance premiums using the money that Defendants withheld from their pre-tax, gross wages, on a bi-weekly basis; and

E) Defendants kept the withheld health insurance premiums and did not pay the money to the health insurance company.

127.    Upon information and belief, the class is so numerous that joinder of all members is impracticable because the number of putative class members exceeds 20.

128.    The class is geographically diverse across Maryland which makes joinder impracticable.

129.    Class action is a superior method because these putative class members are numerous and unknown but easily identifiable through Defendants' records.

130.    Questions of law or fact common to the class, including the core claim that:

A) Defendants improperly withheld the putative class members' health insurance premiums, and

B) Defendants kept the withheld health insurance premiums and did not pay the money to the health insurer.

131.    These core common facts are operative facts for determining claims and defenses.

132.    These core common facts predominate over any inconsequential differences between the putative class members.

133.    Claims and defenses of the representative parties are typical of the claims or

defenses of the class because Defendants subjected the entire class to the same practice of willfully and knowingly withholding and retaining the health insurance premiums.

134.     The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class. This litigation will further class interests.

135.     A class action furthers judicial economy because Mr. Anderson's claims and the class claims require the same proof and elicit the same defenses.

136.     A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

137.     A class action permits unified, efficient discovery.

138.     The class action applies to Count VI of Plaintiff's Complaint.

139.     This class action incorporates all remedies sought under Count VII and any remedy the Court deems just.

## COUNT VII - VIOLATIONS OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW, FAILURE TO TIMELY PAY ALL WAGES DUE

140.     All allegations of the Complaint are expressly incorporated herein.

141.     From May 2016 until October 2016, Defendants withheld funds from Mr. Anderson's gross, pre-tax wages, on a bi-weekly basis, for the purpose of paying Mr. Anderson's insurance premiums.

142.     Instead of paying Mr. Anderson's health insurance premiums, Defendants willfully and intentionally kept the funds that they withheld from Mr. Anderson's gross, pre-tax wages on a bi-weekly basis.

143.     Defendants act of willfully and intentionally keeping the funds that they withheld from Mr. Anderson's gross, pre-tax wages on a bi-weekly basis constituted an improper deduction in violation of the Maryland Wage Payment and Collection Law, Labor and Employment § 3-503.

144.     There is no bona fide dispute as to the wages owed to Mr. Anderson

145.     Relief requested – Mr. Anderson requests that: (a) Defendants be ordered to pay him all improperly deducted owed wages; (b) he be awarded treble damages; (c) that he be awarded pre- and post- judgment interest; and (d) he be awarded his attorney's fees and costs.

146.     All allegations in this Complaint are expressly incorporated herein

147.     From September 2016 to October 2016, Defendants withheld from Mr. Anderson's gross, pre-tax wages, on a bi-weekly basis, for the purpose of paying Mr. Barnes' health insurance premiums.

148.     Instead of paying Mr. Anderson's health insurance premiums, Defendants willfully and intentionally kept the deduction that they withheld from Mr. Anderson's gross, pre-tax wages on a bi-weekly basis.

149.     Defendants act of willfully and intentionally keeping the amount that they withheld from Mr. Anderson's gross, pre-tax wages on a bi-weekly basis constituted an improper deduction in violation of the Maryland Wage Payment and Collection Law, Labor and Employment § 3-503.

150.     There is no bona fide dispute as to the wages owed to Mr. Anderson.

151.     Relief requested – Mr. Anderson requests that: (a) Defendants be ordered to pay him all improperly deducted owed wages; (b) he be awarded treble damages; (c) that he

18

be awarded pre- and post- judgment interest; and (d) he be awarded his attorney's fees and costs.

## *CLASS ACTION*

### *for Improper Deductions under the*

### MARYLAND WAGE PAYMENT AND COLLECTION LAW *under COUNT VII*

### *AS TO DEFENDANTS SHARON CRAIG &MAX CREDIT SCORE*

152.    All allegations of the Complaint are expressly incorporated herein.

153.    Mr. Anderson brings Count VII as a class action on behalf of himself and a class of other persons who:

A) worked for Defendants at anytime from September 2016 until October 2016 in Maryland;

B) purchased voluntary health insurance;

C) agreed to have Defendants withhold their health insurance premiums from their pre-tax, gross wages, on a bi-weekly basis;

D) agreed to have the Defendants pay their health insurance insurance premiums using the money that Defendants withheld from their pre-tax, gross wages, on a bi-weekly basis;

E) Defendants kept the withheld health insurance premiums and did not pay the money to health insurance company.

154.    Upon information and belief, the class is so numerous that joinder of all members is impracticable because the number of putative class members exceeds 20

155.    The class is geographically diverse across Maryland which makes joinder impracticable.

156.     Class action is a superior method because these putative class members are numerous and unknown but easily identifiable through Defendants' records.

157.     Questions of law or fact common to the class, including the core claim that:

A) Defendants improperly withheld the putative class members health insurance premiums, and

B) Defendants kept the withheld health insurance premiums and did not pay the money to health insurance carrier.

C) These core common facts are operative facts for determining claims and defenses.

D) These core common facts predominate over any inconsequential differences between the putative class members.

E) Claims and defenses of the representative parties are typical of the claims or defenses of the class because Defendants subjected the entire class to the same practice of willfully and knowingly withholding and retaining the health insurance premiums.

F) The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class. This litigation will further class interests.

G) A class action furthers judicial economy because Mr. Anderson's claims and the class claims require the same proof and elicit the same defenses.

H) A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

I) A class action permits unified, efficient discovery.

J) The class action applies to Count VII of Plaintiff's Complaint.

K) This class action incorporates all remedies sought under Count III and any remedy the

20

Court deems just.

Respectfully submitted,

Richard Neuworth, Bar #01052
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1202
fax. 410.296.8660
rn@joblaws.net

Devan M. Wang #30211
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1207
fax. 410.296.8660
dw@joblaws.net

*Attorney for the Plaintiffs*

## REQUEST FOR JURY TRIAL

Plaintiffs request that a jury of their peers hear and decide the claims asserted in this Complaint.

Devan M. Wang #30211